UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOKESH MELWANI,

                              Plaintiff,

          - against -

HUNTER LIPTON, EAGLE POINT
FINANCIAL LLC, and MDF HOLDINGS
LLC,

                              Defendants.

**ORDER**

17 Civ. 8308 (PGG) (SLC)

PAUL G. GARDEPHE, U.S.D.J.:

Pro se Plaintiff Lokesh Melwani[1] brings claims for breach of contract, fraud, and

aiding abetting breach of fiduciary duty against Defendants Hunter Lipton,[2] Eagle Point

Financial LLC, and MDF Holdings LLC ("MDF").  (Third Am. Cmplt. ("TAC") (Dkt. No.

111))[3]

Defendants Eagle Point and MDF have moved for summary judgment on the

remaining claims against them – breach of contract as to Eagle Point, and aiding and abetting

breach of fiduciary duty as to MDF.  (Mot. (Dkt. No. 163); Def. Br. (Dkt. No. 166))  This Court

referred the motion to the Magistrate Judge Sarah Cave for a Report & Recommendation

---

[1]  Cantal Trade Ltd. is a named plaintiff in the Third Amended Complaint (TAC (Dkt. No. 111)),
but on September 19, 2022, this Court dismissed Cantal Trade's claims for failure to prosecute.
(Dkt. No. 178)

[2]  In an August 20, 2019 order, this Court stayed this action as to Defendant Hunter Lipton, after
he filed a bankruptcy petition in the U.S. Bankruptcy Court for the District of Nevada.  (Stay
Order (Dkt. No. 82))

[3]  The TAC also contains an unjust enrichment claim against Defendant MDF Holdings LLC.
(TAC (Dkt. No. 111) ¶¶ 36-40).  This claim was voluntarily dismissed on August 27, 2021.
(Dkt. No. 148)

("R&R").  (Dkt. No. 172)  On August 4, 2022, Judge Cave issued an R&R recommending that

the motion be denied as to Defendant Eagle Point and granted as to Defendant MDF.  (R&R

(Dkt. No. 173))

      For the reasons stated below, this Court will adopt the R&R's recommendations

that Eagle Point's motion for summary judgment be denied, and that MDF's motion for

summary judgment be granted.

## BACKGROUND

## I.   PLAINTIFF'S ALLEGATIONS

      Plaintiff Melwani alleges that, in 2010 – through his company Cantal Trade Ltd.

("Cantal") – he invested $300,000 in Eagle Point in exchange for a 32.5 percent stake in that

company.  (TAC (Dkt. No. 111) ¶ 18)  Melwani alleges that on or about July 27, 2011,

Defendant Hunter Lipton – who controls Eagle Point – sold Eagle Point to a third party for

approximately $1.2 million.  (Id. ¶ 22)  Melwani further alleges that Lipton "misappropriate[ed]

the proceeds from that sale" to enable Defendant MDF (then operating under the name GLS,

LLC) to purchase the assets of Telecomica, a telecommunications business.  (Id. ¶ 23)  The TAC

further alleges that Defendant MDF "was created or founded by [D]efendant Hunter Lipton, and

[D]efendant Hunter Lipton remains the chief or sole manager, owner or operating agent of

defendant MDF Holdings LLC."  (Id. ¶ 28)  Plaintiff further alleges that he "ha[s] not been paid

anything for [his and Cantal's] 32.5% equity purchase in Eagle Point."  (Id. ¶ 27)

II.    <u>THE R&R'S FACTUAL STATEMENT</u>[4]

      In her R&R, Judge Cave finds that Melwani – through Cantal – invested a total of $300,000 in Eagle Point in exchange for a 32.5 percent equity stake in the company.  (R&R (Dkt. No. 173) at 4)  The background for Melwani's investment is as follows:

      In January 2010, Lipton approached Melwani about investing in Eagle Point, and after discussions in January and February 2010, Melwani caused Cantal to transfer $200,000 to Eagle Point on March 2, 2010.  (<u>Id.</u> at 4-5)  Lipton and Melwani later discussed an additional investment by Melwani in Eagle Point.  (<u>Id.</u> at 5-6)  In a June 30, 2010 email to Lipton, Melwani "outline[s] the deal [they] had discussed on the phone and the terms [Melwani was] willing to proceed with [as to the additional investment]," which included "$100,000 . . . for an additional 12.5% of the company."  Lipton responded:  "Agreed."  (<u>Id.</u> (citing Dkt. No. 164-2 at 19))  During the remainder of 2010, Cantal transferred an additional $100,000 to Eagle Point.  (<u>Id.</u> at 6)

      In 2011, Lipton's father-in-law, Herb Feinberg – via Feinberg's company Gotham Enterprises & Affiliated, LLC – purchased the assets that came to constitute MDF.  (<u>Id.</u> at 7)  Since MDF's formation in 2011, Feinberg and Gotham have owned the majority of MDF's shares, including all of MDF's voting shares.  (<u>Id.</u>)  In April and May 2011, following the

---

[4]  Because the parties have not objected to Judge Cave's factual statement, this Court adopts it in full.  <u>See</u> <u>Silverman v. 3D Total Solutions, Inc.</u>, No. 18 CIV. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); <u>Hafford v. Aetna Life Ins. Co.</u>, No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

formation of MDF, Feinberg and Gotham loaned MDF $5.4 million to purchase assets from Telecomica and provide working capital.  (Id. at 7-8)

In April 2011, Lipton transmitted $750 to MDF's predecessor entity.  This $750 is "'the only payment[] made by Lipton to fund the formation and/or capitalization of MDF.'"  (Id. at 7 (quoting Berg Decl. (Dkt. No. 165) ¶ 18))

In July 2011, Eagle Point's assets were sold to a third party for $1.2 million.  (Id. at 8)  A schedule of Eagle Point's proposed payouts and an Eagle Point balance sheet from that month list a $300,000 "loan" from Cantal as a liability.  (Id.)  Between July and October 2011, the sale proceeds – except for approximately $380,000 that remained in Eagle Point's attorneys' trust account and $100,000 that is unaccounted for – were distributed to Lipton and a number of third parties, including RAP Sales & Marketing Inc., which received approximately $98,000. (Id. at 8-9)

After the sale of Eagle Point, and during the period between July and December 2011, Melwani and Lipton discussed the sale of Eagle Point and the fact that Melwani had not received any proceeds from the sale.  In email communications with Lipton, Melwani asserted that he had "'bailed [Eagle Point] out with 300 thousand dollars and own[ed] 32.5 percent of [it],'" while Lipton stated that "'[Eagle Point]'s position and proposal [was] that [Melwani's] funds were and are a loan'" of $300,000.  In a later email, Lipton proposed a "payout [to Cantal] based on a 33% ownership position" in Eagle Point.  (Id. at 9-10 (quoting Dkt. Nos. 76-2, 76-3, 164-2 at 20-21))  No payout was ever made to Melwani or Cantal, however.  (Id. at 8-9 (listing recipients of sales proceeds, which do not include either Cantal or Melwani)

III.   **PROCEDURAL HISTORY**

Melwani and Cantal filed the Complaint in Supreme Court, New York County on July 26, 2017, and Defendants removed the case to this Court on October 27, 2017.  (Notice of Removal & Cmplt. (Dkt. No. 1))  Melwani and Cantal filed the First Amended Complaint on March 14, 2018 (Dkt. No. 26), and they filed the Second Amended Complaint ("SAC") on October 5, 2018.  (Dkt. No. 51)

On February 5, 2019, Defendants moved to dismiss the SAC.  (Dkt. No. 72)

On August 20, 2019, this Court stayed the case as to Defendant Lipton, who had filed a bankruptcy petition in the U.S. Bankruptcy Court for the District of Nevada.  (Dkt. No. 82)

In a September 20, 2019 order, this Court granted in part and denied in part Defendants' motion to dismiss the SAC.  (Dkt. No. 86)  Based on the SAC's allegations, the Court concluded that Melwani had standing to bring a breach of contract claim, and that his unjust enrichment claim against MDF was properly pled in the alternative.  (Id. at 8-9, 13-15) The Court found that Melwani had not sufficiently alleged that MDF was a successor-in-interest to Eagle Point, however, and therefore granted the motion to dismiss "[t]o the extent that Plaintiffs' claims against MDF [are] premised on the theory that MDF [was] a successor in interest to Eagle Point."  (Id. at 11)  The Court also dismissed the SAC's conversion claim as inadequately pled and duplicative of the breach of contract claim.  (Id. at 11-13)  In sum, the SAC's claims for breach of contract – as narrowed by the Court – and for unjust enrichment survived the motion to dismiss.[5]

---

[5] Because of the stay as to Lipton, the Court did not consider the SAC's claims against Lipton for breach of contract, fraud, and conversion.  (Sept. 20, 2019 Order (Dkt. No. 86) at 6-7)

On May 7, 2020, Melwani and Cantal moved to file a TAC, and this Court granted that motion on August 12, 2020.  (Dkt. Nos. 99, 109)  Melwani and Cantal then filed the TAC on August 20, 2020.  (Dkt. No. 111)

On August 27, 2021, Melwani and Cantal voluntarily dismissed their unjust enrichment claim against MDF.  (Dkt. No. 148)

On January 18, 2022, this Court granted a motion to withdraw filed by Romano Law.  Romano Law was the last in a series of law firms to represent Melwani and Cantal.  (Dkt. No. 158)  After granting the motion to withdraw, this Court explained to Plaintiff Melwani that Cantal – as a corporate entity – "[could not] appear in this lawsuit other than through counsel," and that if Cantal did not retain new counsel its claims would be dismissed for failure to prosecute.  (Id.)  This Court also set a briefing schedule for Defendants' motion for summary judgment, as well as any motion by Defendants to dismiss Cantal's claims in the event that Cantal did not retain counsel.  (Id.)

On February 10, 2022, Defendants MDF and Eagle Point moved to dismiss Cantal's claims for failure to prosecute.  (Dkt. No. 160)

On February 28, 2022, Defendant Eagle Point moved for summary judgment on Plaintiffs' breach of contract claim, and MDF moved for summary judgment on Plaintiffs' claim that it had aided and abetted Lipton's breach of fiduciary duty.  (Dkt. No. 163)  Melwani filed an opposition (Dkt. No. 168), but he did not respond to Defendants' Local Rule 56.1 statement of undisputed material facts.  This Court referred Defendants' summary judgment motion to the assigned magistrate judge on May 6, 2022 (Dkt. No. 172), and Judge Cave issued her R&R on August 4, 2022, recommending that the motion for summary judgment be denied as to the breach

of contract claim against Eagle Point but granted as to the aiding and abetting claim against MDF.  (Dkt. No. 173)

On September 19, 2022, this Court granted Defendants' motion to dismiss Cantal's claims for failure to prosecute.  (Dkt. No. 178)

Melwani filed his objections to the R&R on October 4, 2022.  (Dkt. No. 182) MDF filed an opposition to Melwani's objections on October 17, 2022.  (Dkt. No. 183)

Eagle Point has not objected to the R&R.

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke <u>de novo</u> review.'" <u>Phillips v. Reed Grp., Ltd.</u>, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting <u>Vega v. Artuz</u>, 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." <u>IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.</u>, 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing <u>Pearson-Fraser v. Bell Atl.</u>, No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and <u>Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan</u>, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); <u>see also</u> <u>Ortiz v. Barkley</u>, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

**B.     <u>Summary Judgment Standard</u>**

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." <u>Beyer v. Cnty. of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted). "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the non[-

8

]moving party's claim.'"   Lesavoy v. Lane, No. 02 Civ. 10162, 2008 WL 2704393, at *7

(S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Mags., Inc., 936 F.2d 112, 116 (2d Cir.

1991)).

   In deciding a summary judgment motion, the Court "resolve[s] all ambiguities,

and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment." Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quotation

marks and citation omitted).  However, a "party may not rely on mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment.  Mere conclusory

allegations or denials . . . cannot by themselves create a genuine issue of material fact where

none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quotation

marks, alterations, and citation omitted). "'Assessments of credibility and choices between

conflicting versions of the events are matters for the jury, not for the court on summary

judgment.'"  Eviner v. Eng, No. 13-CV-6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July

29, 2015) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)).  A moving party can

demonstrate the absence of a genuine issue of material fact "in either of two ways:  (1) by

submitting evidence that negates an essential element of the non-moving party's claim, or (2) by

demonstrating that the non-moving party's evidence is insufficient to establish an essential

element of the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875

F.3d 107, 114 (2d Cir. 2017) (quotation marks and citation omitted).

   Pro se submissions are "construed liberally and interpreted to raise the strongest

arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.

2006) (quotation marks, emphasis, and citation omitted).  A pro se litigant must, however, still

"meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks and citation omitted).

## II.   ANALYSIS

### A.   Recommendation that Eagle Point's Summary Judgment Motion Be Denied

No party has objected to the R&R's recommendation that Eagle Point's motion for summary judgment be denied. The Court therefore reviews that recommendation for clear error. See Gilmore, 2011 WL 611826, at *1.

In arguing that it is entitled to summary judgment, Eagle Point contends that (1) Melwani lacks standing to assert a breach of contract claim, because Cantal and not Melwani made the investment in Eagle Point; and (2) there is no enforceable contract between Melwani/Cantal and Eagle Point. (Def. Br. (Dkt. No. 166) at 20-23)

As to whether there is an enforceable contract, Judge Cave notes that Eagle Point has "repeatedly 'stipulated that it had a contract concerning' Plaintiffs' investment in Eagle Point," and notes that in 2011-12 emails between Melwani and Lipton, Lipton "appears to acknowledge the existence of an agreement between the parties." (R&R (Dkt. No. 173) at 25 (citing Dkt. Nos. 76-3, 164-2 at 20-21, 166 at 21)) And as to the standing point, Judge Cave cites evidence in the record showing that (1) Cantal was merely the vehicle through which Melwani transferred funds to Eagle Point; and (2) "Melwani 'is the ultimate beneficial owner' of Cantal and the 'source of Cantal's funds.'" (Id. at 22-23 (citing Pltf. Opp. (Dkt. No. 168) at 2, 5-6, 26)

Having reviewed this portion of the R&R, this Court finds no clear error. Accordingly, the Court adopts the R&R's recommendation that Eagle Point's motion for summary judgment on Melwani's breach of contract claim be denied.

**B.**     <u>**Recommendation that MDF's Summary Judgment Motion Be Granted**</u>

Melwani alleges that MDF aided and abetted Lipton's breach of fiduciary duty.

(TAC (Dkt. No. 111) ¶¶ 60-68)  In recommending that the Court grant MDF's summary

judgment motion, Judge Cave sets out the standard under New York law for aiding and abetting

a breach of fiduciary duty:

> "To sustain a claim for aiding and abetting breach of fiduciary duty, a plaintiff must
> allege:  (1) a breach of fiduciary duty; (2) knowledge of the breach by the aider and
> abettor; (3) substantial assistance by the aider and abettor in achieving the breach; and (4)
> that plaintiff suffered damage as a result of the breach.  Substantial assistance occurs
> when a defendant affirmatively assists, helps conceal or fails to act when required to do
> so, thereby enabling the breach to occur."

(R&R (Dkt. No. 173) at 17-18 (quoting <u>Howe v. Bank of New York Mellon</u>, 783 F. Supp. 2d

466, 485 (S.D.N.Y. 2011)))  Judge Cave notes that – to show "knowledge of the breach" – a

plaintiff must demonstrate that the aider and abettor had "<u>actual</u> <u>knowledge</u> of the breach of duty

. . . . Constructive knowledge . . . is legally insufficient."  (<u>Id.</u> at 18 (emphasis in original;

quotation omitted))

Judge Cave concludes that Melwani has not proffered evidence sufficient to

create a material issue of fact as to whether MDF aided and abetted Lipton's alleged breach of

fiduciary duty claim:

> The Court agrees with MDF . . . that Plaintiffs' Aiding and Abetting Claim fails
> on the merits.  As discussed above, Plaintiffs premise this claim on the allegation
> that "Lipton diverted the proceeds of the [S]ale of Eagle Point [] into [MDF]'s
> control, an entity in which Plaintiffs were not members, in order to allow MDF []
> to acquire Telecomica, rendering the sale proceeds unrecoverable."  (TAC (Dkt.
> No. 111) ¶ 65)  Even assuming Melwani established Lipton's breach of a
> fiduciary duty, he has presented no evidence to suggest that MDF knew of that
> breach, much less that it provided substantial assistance.  Indeed, contrary to
> Plaintiffs' allegations, the record reflects that:  (i) Gotham – not Lipton – loaned
> MDF the funds for the purchase of Telecomica (Berg Decl. (Dkt. No. 165) ¶ 22;
> <u>see id.</u> ¶¶ 24-30; <u>see also</u> Dkt. Nos. 165-1 at 4-18; 165-2); (ii) this loan
> "represented the entire amount of the purchase of Telecomica's assets as well as
> the $450,000 of working capital" (Berg. Decl. (Dkt. No. 165) ¶ 32); (iii) "MDF

did not utilize funds from any other source . . . for the asset purchase" (id.); Lipton paid a total of $750 to GLS in connection with the creation of MDF (id. ¶ 16; see Dkt. No. 165-1 at 2-3); and (iv) these payments were "the only payments made by Lipton to fund the formation and/or capitalization of MDF." (Berg. Decl. (Dkt. No. 165) ¶ 18)

Melwani has presented no evidence to contradict these facts or to otherwise suggest MDF substantially assisted Eagle Point's breach of their fiduciary duty. While Melwani claims that "Lipton exercised de facto control over [MDF's] operations and finances[,]" (Pltf. Opp. (Dkt. No. 168) at 3), he offers no evidence indicating that Lipton wielded that alleged authority to implicate MDF in the alleged breach of fiduciary duty, i.e., the misappropriation of the Sale proceeds. Melwani notes that RAP Sales received $97,650.00 of the Sale proceeds, and argues that, because it is "in the same business as MDF[,]" there "is a further issue for determination as to whether this company was purchased on behalf of MDF using" funds from Sale. (Pltf. Opp. (Dkt. No. 168) at 5; see Dkt. Nos. 165 ¶ 50; 167 ¶ 64) Melwani, however, offers no evidence connecting MDF to RAP Sales at all, much less to RAP Sales' receipt of the Sale proceeds. With no evidence connecting MDF to Lipton's breach of a fiduciary duty, Plaintiffs' Aiding and Abetting Claim cannot withstand dismissal. See In re Platinum-Beechwood Litig., 2020 WL 1932601, at *12 (granting summary judgment on certain aiding and abetting breach of fiduciary duty claims where the plaintiffs presented "no evidence tying [the defendant] to any specific transactions at issue, whether in terms of actual knowledge or substantial assistance").

(R&R (Dkt. No. 173) at 20-21 (record citation formatting altered))

Judge Cave thus concludes that Melwani has not proffered evidence that MDF (1) had knowledge of Lipton's breach of fiduciary duty; or (2) substantially assisted Lipton's alleged breach of fiduciary duty. Judge Cave also concludes that Melwani has not offered evidence that Lipton controls MDF. Melwani objects to all of these findings. (Pltf. Objs. (Dkt. No. 182))

As to control, Melwani argues that Lipton "exercised complete de facto control of MDF." Melwani relies on allegations in an adversary proceeding in Lipton's bankruptcy; allegations in a New York state lawsuit against MDF; and Lipton's use of an MDF email account. (Pltf. Objs. (Dkt. No. 182) at 1-2) Melwani also states that MDF, like Eagle Point, was "the corporate embodiment of Lipton and served as an alter ego to him." (Id. at 5) These

objections are near-verbatim rehashings of arguments Melwani made in opposing MDF's motion for summary judgment.  (See Opp. (Dkt. No. 168) at 2-3, 6)

As to knowledge, Melwani states that Lipton's knowledge of the breach may be imputed to MDF; that "Lipton also told [Melwani] on several occasions that he was discussing [Melwani's] settlement with [] Feinberg"; and that Lipton's then-wife knew of the breach because Melwani "wrote to her personally."  (Pltf. Objs. (Dkt. No. 182) at 4)  Melwani's objections concerning Judge Cave's knowledge findings rehash arguments he made in his opposition to the motion for summary judgment.  (See Opp. (Dkt. No. 168) at 7)

Accordingly, the R&R's findings as to control and knowledge will be reviewed for clear error.  See IndyMac Bank, F.S.B., 2008 WL 4810043, at *1.

As to substantial assistance, Melwani concedes that "Gotham lent Lipton the funds to acquire MDF."  (Pltf. Objs. (Dkt. No. 182) at 3)  But he complains that Judge Cave erred in concluding that Melwani "did not prove that Rap [Sales] received[] funds from [the Eagle Point sale]."  Melwani states that he is attaching documents demonstrating that RAP Sales received a portion of the proceeds from the sale of Eagle Point.  (Id.)

As an initial matter, Melwani attaches no such documents.  (Id.)  In any event, Judge Cave acknowledges that RAP Sales received a portion of the proceeds from the Eagle Point sale.  (R&R (Dkt. No. 173) at 8)  She finds that fact immaterial, because "Melwani . . . offers no evidence connecting MDF to RAP Sales at all, much less to RAP Sales' receipt of the Sale proceeds."  (R&R (Dkt. No. 173) at 21)  Melwani has thus mischaracterized the R&R, and his objection does not address an actual finding made in the R&R.

Accordingly, the Court will likewise review the R&R's findings as to substantial assistance for clear error.

Having reviewed those portions of the R&R addressing Melwani's aiding and abetting a breach of fiduciary duty claim, this Court finds no error in Judge Cave's conclusion that Melwani has not proffered evidence sufficient to create a material issue of fact as to whether MDF substantially assisted Lipton's alleged breach of fiduciary duty.

As to whether Lipton controlled MDF, this Court acknowledges that it is undisputed that Lipton was the chief executive officer of MDF.  (See Berg. Decl. (Dkt. No. 165) ¶ 34 ("From the commencement in 2011 until February of 2019, Lipton served as CEO of MDF."))  But ultimately Lipton's role as CEO of MDF and his control over MDF are irrelevant, because – as discussed below – there is no evidence that MDF substantially assisted Lipton in any breach of the fiduciary duty he allegedly owed Melwani.  Melwani's theory of substantial assistance – as pled in the TAC – is that Lipton used the proceeds of the sale of Eagle Point to "capitalize[]" MDF.  (TAC (Dkt. No. 111) ¶ 29)  Melwani now concedes that this foundational allegation is not true; he admits that "Gotham lent Lipton the funds to acquire MDF."  (Pltf. Objs. (Dkt. No. 182) at 3)  This concession completely undermines the theory of Melwani's claim against MDF, which is that Lipton "diverted the proceeds of the sale of Eagle Point . . . into [MDF's] control . . . in order to allow MDF . . . to acquire Telecomica, rendering the sale proceeds unrecoverable."  (TAC (Dkt. No. 111) ¶ 65)

Accordingly, MDF is entitled to summary judgment on Melwani's claim that MDF aided and abetted Lipton's breach of fiduciary duty.[6]

---

[6]  Having so concluded, this Court need not reach MDF's argument that Melwani's claim is time-barred.  (See Def. Opp. to Pltf. Objs. (Dkt. No. 183) at 9)

## <u>CONCLUSION</u>

For the reasons stated above, this Court adopts the R&R's recommendation that

Defendant Eagle Point's motion for summary judgment be denied, and that Defendant MDF

Holdings' motion for summary judgment be granted.  The Clerk of Court is directed to terminate

the motion (Dkt. No. 163) and to terminate MDF Holdings LLC as a Defendant.

Dated: New York, New York
       February 14, 2023

                                SO ORDERED.

                                _____
                                Paul G. Gardephe
                                United States District Judge